**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FABRIZIO BIVONA,** | : | No. 3:23cv1154 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **BOROUGH OF GIRARDVILLE** | : | |
| **(GIRARDVILLE BOROUGH COUNCIL** | : | |
| **and GIRARDVILLE POLICE** | : | |
| **COMMITTEE), MAYOR JUDITH L.** | : | |
| **MEHLBAUM (individually); and** | : | |
| **EDWARD BURNS (individually),** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Plaintiff Fabrizio Bivona brings this action alleging violations of 42 U.S.C. §

1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil

Rights Act of 1964 ("Title VII"), the Pennsylvania Whistleblower Law, 43 P.S. §

1423 ("Whistleblower Law"), and wrongful termination in violation of state public

policy.  Before the court are two motions: 1) a motion to dismiss plaintiff's

amended complaint filed by the defendants (Doc. 18); and 2) a motion for leave

to file a second amended complaint filed by the plaintiff, (Doc. 20).  As discussed

further below, plaintiff filed the motion to amend in lieu of a merits response to

defendants' motion to dismiss.  These motions are ripe for a decision.

## Background

The amended complaint generally alleges official corruption in Girardville, Schuylkill County, Pennsylvania by elected officials and members of the police department.[1] (Doc. 12).  Plaintiff alleges that he was wrongfully discharged from his position of chief of police/officer-in-charge of the Girardville Police Department by Defendants Borough of Girardville, Mayor Judith L. Mehlbaum, and Edward Burns (a borough councilmember) for opposing and reporting the alleged corruption.

More specifically, plaintiff alleges that the defendants hired him as chief of police on or about March 4, 2022. (Id. ¶¶ 44, 51).  Mayor Mehlbaum put the Pennsylvania State Police on notice of the decision and handwrote a letter on police department letterhead acknowledging plaintiff as chief of police. (Id. ¶¶ 48-53).

Per plaintiff, two months into his employment, Mayor Mehlbaum approached the plaintiff in his office and advised that she had a problem with her neighbors. (Id. ¶ 76).  Mayor Mehlbaum described these neighbors as "meth heads," "dirtbags," and "trash" and instructed plaintiff to "take care of that for me"

---

[1] At this stage of the proceedings, the court must accept all factual allegations in the plaintiff's pleadings as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted).  The court makes no determination, however, as to the ultimate veracity of these assertions.

and "get rid of them." (Id. ¶¶ 77, 84).  Plaintiff asked Mayor Mehlbaum to provide a written complaint like any other citizen of Girardville. (Id. ¶ 78).  Mayor Mehlbaum refused and ordered plaintiff to go to the home and use his police powers to harass her neighbors.  (Id. ¶ 79).  She also expressed annoyance and commented to plaintiff, "this is what we pay you for[.]" (Id. ¶ 89).  According to plaintiff, Mayor Mehlbaum asked him to level false allegations to force the neighbors out of their home. (Id. ¶ 81).  Plaintiff explained he could not use the police department as a private security force for the mayor or for borough council. (Id. ¶ 85).

At some point, Mayor Mehlbaum filed a written complaint about her neighbor's dog barking. (Id. ¶ 90).  Plaintiff then investigated and issued a verbal warning to the residents because the dog was not barking when he went to the premises. (Id. ¶¶ 91-92).  Plaintiff's subsequent explanation to Mayor Mehlbaum about his response to her complaint made her visibly annoyed and angry and prompted comments from the mayor that plaintiff was not doing his job. (Id. ¶ 93).

Per plaintiff, Mayor Mehlbaum continued to make inappropriate requests to the plaintiff and other police officers to harass and intimidate residents of Girardville that the mayor "personally considered undesirable[,]" including Hispanic members of the community. (Id. ¶¶ 95-97).

At some point, Mayor Mehlbaum then took her requests to investigate her neighbors to another borough police officer, Jeremy Talanca. (Id. ¶¶ 98-99).  On the evening of Sunday, May 9, 2022, Talanca and another officer entered the home of Mayor Mehlbaum's neighbors, the same neighbors that the mayor asked the plaintiff to investigate. (Id. ¶¶ 99-100, 107).  Per plaintiff, Talanca and the other officer entered the home without a warrant and without receiving a call or complaint. (Id. ¶¶ 101-02).  They entered and proceeded through the home with guns drawn while the residents were enjoying a family barbecue in the backyard. (Id. ¶¶ 104-09).  A child believed a break-in was occurring at the residence and one of the family members entered the house and encountered the officers. (Id. ¶¶ 109-110).  The family questioned why the officers were there with their guns drawn. (Id. ¶ 111).  The officers allegedly claimed that they chased someone into the home and were responding to a 911 call but were also "not able to explain why they were in the home[.]" (Id. ¶¶ 113-15).  The family filed multiple complaints with the borough, which Mayor Mehlbaum allegedly refused to investigate. (Id. ¶ 116).

Plaintiff received one of the complaints through the borough secretary. (Id. ¶ 117). He reviewed body camera footage and concluded that Talanca and the other officer violated the civil rights of the family. (Id. ¶ 118).  Plaintiff filed a written complaint about the officers and explained that the continued employment

of these officers implicated a risk to the public. (Id. ¶¶ 118-19).  Per plaintiff, Mayor Mehlbaum refused to consider plaintiff's reports. (Id. ¶ 119).

During another incident, defendants allegedly attempted to use code enforcement and zoning officers to harass a Hispanic family and force them out of the borough. (Id. ¶ 123).  Per plaintiff, Talanca harassed members of this family and reports began to surface about Talanca's conduct. (Id. ¶ 124). Plaintiff shared a citizen's complaint about Talanca on or about July 28, 2022. (Id. ¶ 126).  Plaintiff found the complaint credible and recommended the arrest of Talanca for criminal trespass and harassment. (Id. ¶ 127).  Plaintiff also concluded that Talanca should be found in dereliction of duty for abandonment of his post, misuse of department vehicles and equipment, and for recklessly endangering children. (Id. ¶ 131).  Plaintiff further investigated Talanca and learned he had been relieved of duty as police chief in the Borough of Sugar Notch, Luzerne County for various misconduct. (Id. ¶¶ 143-151).  Per plaintiff, he reported multiple issues about misconduct by Talanca, but Mayor Mehlbaum refused to consider them because Talanca operated as the mayor's personal security force. (Id. ¶¶ 128-29, 152).

Plaintiff alleges that Mayor Mehlbaum and the other defendants retaliated against him and terminated his employment for refusing to engage in police misconduct and for reporting and opposing wrongful and illegal conduct by Mayor

5

Mehlbaum and other members of the borough's police department. (Id. ¶¶ 155-58).   Per plaintiff, defendants fired him on either January 11, 2023 or January 12, 2023. (Id. ¶¶ 56, 58, 61, 67, 69).  Defendants, led by Mayor Mehlbaum, also allegedly spread false information about plaintiff through news articles and worked to prevent him from securing future employment in policing. (Id ¶¶ 38, 43, 60).  On January 11, 2023, the Shenandoah Sentinel published an article quoting Mayor Mehlbaum as stating: "He was never the chief," referring to the plaintiff. (Id. ¶¶ 58-59).  Per plaintiff, the false statement was published multiple times in the Pottsville Republican Herald and on yahoo.com. (Id. ¶ 63).  According to the yahoo.com article, plaintiff faced a suspension from duty on December 30, 2023 for "working when told not to work; filing citations against fellow officers while suspended; falsely representing himself as chief of police; and ignoring orders to turn in his badge, keys and other borough property." (Id.)  Per plaintiff, Mayor Mehlbaum and other defendants intentionally made these false statements to the press. (Id. ¶ 64).

Based on the above allegations, the amended complaint asserts a Section 1983 claim in Count I against all named defendants. (Id. ¶ 174-203).  The heading of Count I also asserts violations of Section 1981 and Title VII by the defendants. (Id.)  In Count II, plaintiff alleges that the defendants violated the

state Whistleblower Law and, in Count III, plaintiff raises a state law claim for wrongful termination in violation of public policy. (Id. ¶¶ 204-05).

Defendants responded to the amended complaint with a motion to dismiss for failure to state a claim.  (Doc. 18).  Defendants timely filed a brief in support of the motion. (Doc. 19).  Shortly after the deadline for a brief in opposition to the motion to dismiss, plaintiff responded with the motion to amend. (Doc. 20).[2]  After several fits and starts, as discussed below, plaintiff also filed a brief in support (Doc. 32) and a proposed second amended complaint (Doc. 32-1), which brings this case to its present posture.

As discussed further below, the proposed second amended complaint includes claims for race-based discrimination, harassment, retaliation in violation of Title VII (Counts I-II), (id. ¶¶ 178-255), similar claims asserted pursuant to Section 1981 (Count III), (id. ¶¶ 256-294), Section 1983 claims for First Amendment retaliation and violations of plaintiff's equal protection and due process rights (Count IV), (id. ¶¶ 295-346), a state Whistleblower Law claim (Count V), (id. ¶¶ 348-363), and a claim for wrongful termination in violation of public policy, (id. ¶¶ 364-369).  The proposed second amended complaint also offers more allegations relative to the defendants' alleged conduct in targeting plaintiff and certain residents of Girardville based on their race, plaintiff's

---

[2] Plaintiff never filed a brief in opposition to the motion to dismiss.

reporting of borough corruption to the Pennsylvania Attorney General's office, and Defendant Burns's involvement relative to plaintiff's causes of action.

## Jurisdiction

Because this case is brought pursuant to Section 1981, Section 1983, and Title VII, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state Whistleblower Law and wrongful termination claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

## Legal Standards

As noted above, pending are a motion to dismiss plaintiff's amended complaint filed by the defendants and plaintiff's motion for leave to file a second amended complaint.  The legal standards relevant to these motions overlap to a certain degree.

Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

But even "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Id. at 245 (citation omitted).  And to the extent that plaintiff violated the Rules of Court for the Middle District of Pennsylvania ("Local Rules")

9

by not filing a brief in opposition to the motion to dismiss, see M.D.PA. L.R. 7.6,

the court cannot simply deem the motion unopposed and dismiss the amended

complaint without a merits analysis of whether the amended complaint states a

claim. See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991).

Plaintiff also seeks leave to file a second amended complaint.  Pursuant to

the Federal Rules of Civil Procedure, courts are instructed to "freely give leave

when justice so requires."  FED. R. CIV. P. 15(a)(2).  Leave to amend should be

given absent any "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment,

[or] futility of amendment[.]" Foman v. Davis, 371 U.S. 178, 182 (1962).  "If the

underlying facts or circumstances relied upon by a plaintiff may be a proper

subject of relief, he ought to be afforded an opportunity to test his claim on the

merits." Id.

**Analysis**

The court believes in practical solutions.  To address the pending motions,

the court will consider the arguments in the order raised in the defendants' brief

in support of their motion to dismiss.  Where those arguments are addressed by

plaintiff by way of the separate motion to amend or by an attempt to cure any

raised deficiencies in the proposed second amended complaint, the court will

consider whether such an amendment would reflect undue delay, bad faith, dilatory motive, undue prejudice to the defendant, or futility.  Where the arguments raised in defendants' motion to dismiss are not challenged, the court will conduct a merits analysis as to whether plaintiff has stated a claim in the amended complaint.  Where the amended complaint fails to state a claim, the court will then determine whether the deficiency could be cured by the proposed second amended complaint offered for consideration.  To the extent that this course of action causes any prejudice to the defendants, defendants would be entitled to file a responsive pleading to the second amended complaint, including a renewed motion to dismiss.

Defendants raise numerous arguments in support of dismissal.  The court addresses each argument *seriatim*.

### 1. Plaintiffs' Claims for Punitive Damages, Statutory Damages, and Liquidated Damages

First, defendants move to dismiss plaintiff's claims for punitive damages, statutory damages, and liquidated damages. This portion of the motion to dismiss will be granted in part with prejudice and denied in part.

Plaintiff's amended complaint seeks punitive damages against all defendants on all claims. (Doc. 12, ECF p. 28, Prayer for Relief).  Defendants argue that punitive damages are not recoverable against a municipality for Section 1981 and Section 1983 claims.  The court agrees. See City of Newport v.

11

Fact Concerts, Inc., 453 U.S. 247, 271 (1981)(Section 1983 claims); Evans v.
Port Auth. of New York & New Jersey, 273 F.3d 346, 356 (3d Cir. 2001)(Section
1981 claims).  Accordingly, the motion to dismiss plaintiff's claim for punitive
damages will be granted regarding the Defendant Borough of Girardville on the
Section 1981 and Section 1983 claims without leave to amend. Plaintiff may not
assert claims for punitive damages against this defendant on those causes of
action.

As for the borough officials named in their individual capacity, i.e., Mayor
Mehlbaum and Councilmember Burns, plaintiff may recover punitive damages
under Sections 1981 and 1983 "where the 'defendant's conduct is shown to be
motivated by evil motive or intent, or when it involves reckless or callous
indifference to the federally protected rights of others.' " Sec. & Data Techs., Inc.
v. Sch. Dist. of Philadelphia, 145 F. Supp. 3d 454, 469 (E.D. Pa. 2015)(quoting
Smith v. Wade, 461 U.S. 30, 56 (1983)).  The amended complaint is laden with
allegations, assumed to be true at this stage, that Mayor Mehlbaum acted with
the requisite mental state sufficient to support a claim for punitive damages.  The
proposed second amended complaint also includes additional facts regarding
Councilmember Burns, which could support a claim for punitive damages.  (See
Doc. 32-1 ¶¶ 200-213, 217-239).  Otherwise, the motion to dismiss plaintiff's

punitive damages claims against the individual defendants is denied where such damages are recoverable under the law.

Defendants also move to dismiss plaintiff's claims for statutory damages and liquidated damages. These types of damage claims will be dismissed without leave to amend. First, the statutes forming the bases of plaintiff's federal and state claims do not call for the award of statutory damages. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986)("when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts."); see also 43 PA. STAT. § 1425 (permitting a court to order as it considers appropriate "reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies" in rendering a judgment in an action brought under the Whistleblower Law). Second, the term liquidated damages denotes "the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable if the breach occurs." Pantuso Motors, Inc. v. Corestates Bank, N.A., 798 A.2d 1277, 1282 (Pa. 2002)(internal quotation marks, ellipses, and citations omitted). Plaintiff has alleged wrongful termination for violation of public policy, not

13

termination in breach of an employment contract that contained a liquidated damages provision.  The law provides no basis for a liquidated damages claim in this matter and thus that request for relief will be dismissed with prejudice. Accordingly, plaintiff may not raise claims for statutory damages and liquidated damages in the second amended complaint.

### 2. Plaintiffs' Claim for First Amendment Violations

Count I of plaintiff's amended complaint alleges that the defendants violated his First, Fourth, Fifth, and Fourteenth Amendment rights. (Doc. 12 ¶¶ 176, 191).  Defendants argue in the motion to dismiss that the plaintiff failed to plead a viable First Amendment violation.  Such a claim is not reflected in the heading of Count I of the amended complaint, but a close reading of the supporting facts could be construed in support of such a claim.  (See Doc. 12 at ¶¶ 152-158).  In the proposed second amended complaint, plaintiff attempts to cure any factual deficiencies by pleading that he responded to citizen complaints about other police officers and reported their alleged misconduct not only as the chief of police, but also as a private citizen.  (See Doc. 32-1 ¶¶ 218, 301-02, 311).

Defendants oppose all of plaintiff's attempts to amend through the unorthodox approach pursued by plaintiff's counsel, arguing that such conduct is in bad faith. Defendants also argue that plaintiff counsel's flagrant violation of the

Local Rules requires dismissal of the action pursuant to Federal Rule of Civil Procedure 41(b) and <u>Poulis v. State Farm Fire & Cas. Co.</u>, 747 F. 2d 863 (3d Cir. 1984). (Doc. 23, Br. in Opp. #1 at pp. 12-21; Doc. 36 Br. in Opp. #2 at pp. 12-13).

Prior to dismissing an action, however, the court must consider the <u>Poulis</u> factors, which include: (1) the extent of the party's personal responsibility; (2) prejudice to the opposing party; (3) the history of dilatoriness; (4) whether the conduct of the party or its lawyer was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  <u>See</u> <u>id.</u> at 868. To the extent that some of the <u>Poulis</u> factors (prejudice, history of dilatoriness, and bad faith) also overlap with factors justifying the denial of an amendment, plaintiff's attempts to bolster his First Amendment claim through the proposed second amended complaint is fertile soil for a combined analysis that impacts the other claims where plaintiff now seeks leave to amend.

### a. Personal Responsibility

The court has previously determined that plaintiff violated the Local Rules by not timely filing a brief in support of the motion to amend, <u>see</u> M.D. PA. L.R. 7.5, and by not timely attaching a proposed second amended complaint to the motion to amend, <u>see</u> M.D. PA. L.R. 15.1. (<u>See</u> Doc. 26)  But plaintiff ultimately filed a brief in support and proposed second amended complaint as ordered.

(See Docs. 29, 31, 32, 32-1).  The first <u>Poulis</u> factor requires the consideration of how much a party is personally responsible for the challenged conduct. <u>See</u> 747 F.2d at 868.  Plaintiff was not personally responsible for the conduct of his counsel in violating the Local Rules and missing deadlines.  This factor weighs against dismissal.

### b. Prejudice, History of Dilatoriness, and Bad Faith

Prejudice, dilatoriness, and bad faith are separate <u>Poulis</u> factors and are also reasons that leave to amend would be denied.  Regarding whether the action should be dismissed for failure to follow the Local Rules, the defendants' dilatoriness and bad faith arguments also hinge on the conduct of plaintiff's counsel.  Plaintiff's counsel never filed a brief opposing the motion to dismiss. The court had to strike extraneous and irrelevant information included by plaintiff's counsel from a certificate of nonconcurrence regarding the motion to amend. (Doc. 26).  The court also had to issue two orders warning plaintiff's counsel that the motion to amend would be deemed withdrawn if a brief was not filed with a proposed amended complaint. (Docs. 26, 31).  Ultimately, plaintiff's counsel complied some seven (7) weeks after the deadline contemplated by the Local Rules.  The court does not condone missed deadlines and violations of the Local Rules.  These violations, however, occurred between October 27, 2023 and December 29, 2023, a two-month period.  Plaintiff's counsel appears to have

been referred to the Disciplinary Committee of the Eastern District of

Pennsylvania for conduct which occurred during this time in another matter.

Ayala v. Tasty Baking Co., No. 2:22-CV-03849-WB, 2024 WL 128200, at *1-*4

(E.D. Pa. Jan. 10, 2024).  Plaintiff's counsel was also administratively suspended

from practicing law in Pennsylvania for a portion of this period. (See Docs. 27,

29).  The court would have to resort to speculation to understand the full picture

behind the noncompliance by plaintiff's counsel.  And even with these violations

of the Local Rules, plaintiff's counsel complied with court orders upon

reinstatement from administrative suspension and filed the documents the court

requested.  The information available to the court weighs against dismissal of this

action at this time.[3]

As for whether plaintiff should be permitted to amend allegations regarding

First Amendment retaliation, courts are instructed to freely give leave to amend

when justice so requires. See FED. R. CIV. P. 15(a)(2). "[A] court may consider a

movant's 'undue delay' or 'dilatory motive' in deciding whether to grant leave to

amend under Rule 15(a)." Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 553

---

[3] The fifth Poulis factor considers the availability and effectiveness of alternative sanctions. Defendants responded to plaintiff's counsel's conduct by seeking the harshest sanction possible, dismissal of the action.  In light of the circumstances, plaintiff's counsel is admonished for his conduct to date and directed to read the Local Rules, available at https://www.pamd.uscourts.gov/sites/pamd/files/LR120114.pdf.  Future failures to comply with the Local Rules and with orders of court may result in additional sanctions up to and including the dismissal of this case. See Shaw v. Vetforce, Inc. Pennsylvania, No. 4:23-CV-01868, 2024 WL 3330584 (M.D. Pa. July 8, 2024)

(2010)(citing Foman, 371 U.S. at 182 (1962)).  Moreover, "[l]eave to amend must

generally be granted unless equitable considerations render it otherwise unjust."

Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006)(citing Foman, 371 U.S.

at 182; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)).

Prejudice to the non-moving party is the touchstone for denying an

amendment. Id. (citing Lorenz, 1 F.3d at 1414)(further citation omitted).  To deny

an amendment, such prejudice must be "substantial or undue[.]" Cureton, 252

F.3d at 273 (citing Lorenz, 1 F.3d at 1414).  Courts "focus on the hardship to the

defendant[] if the amendment were permitted." Id. (citing Adams v. Gould Inc.,

739 F.2d 858, 868 (3d Cir. 1984)).

At this juncture, there is no actual hardship to the defendant in permitting

plaintiff to amplify his First Amendment retaliation claim.  This matter remains at

the pleading stage and discovery into the First Amendment claim would be

coextensive with discovery into plaintiff's other claims and causes of action.

Accordingly, any delay in plaintiff not clearly alleging a First Amendment claim in

his initial pleadings does not rise to the level where amendment should be

denied.

### c. Meritoriousness of the Claims / Futility of Amendment

In addition to the reasons discussed above, a court may deny leave to

amend a complaint where the amendment would be futile. See Foman, 371 U.S.

18

at 178. "In assessing futility [of amendment], the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)(citation and internal quotation marks omitted).  "By adhering to a Rule 12(b)(6) standard, the court is assured that any new claims, without true merit, will fail." Provenzano v. Integrated Genetics, 22 F.Supp. 2d 406, 411 (D.N.J. 1998) (citations omitted). The sixth Poulis factor similarly considers the meritoriousness of a claim. 747 F. 2d at 868.

As proposed, plaintiff's First Amendment retaliation claim does not appear futile.  First Amendment protection of a public employee's speech "depends on a careful balance 'between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " Lane v. Franks, 573 U.S. 228, 231 (2014) (quoting Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois, 391 U.S. 563, 568 (1968)(brackets omitted)).  "[C]itizens do not surrender their First Amendment rights by accepting public employment." Id.

In order to state a First Amendment retaliation claim, a public employee must first demonstrate that her speech is constitutionally protected.  Flora v.

19

Cnty. of Luzerne, 776 F.3d 169, 174 (3d Cir. 2015).  A public employee's

statement is protected by the First Amendment when:

> (1) in making it, the employee spoke as a citizen, (2) the
> statement involved a matter of public concern, and (3) the
> government employer did not have 'an adequate
> justification for treating the employee differently from any
> other member of the general public' as a result of the
> statement he made.

Hill v. Borough of Kutztown, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting
Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); see also De Ritis v. McGarrigle,
861 F.3d 444, 452 (3d Cir. 2017)(citing Munroe v. Central Bucks Sch. Dist., 805
F.3d 454, 466 (3d Cir. 2015)).

Defendants specifically attack plaintiff's articulation of the first sub-element

in the amended complaint. (Doc. 19, Br. in Supp. MTD at 8).  As for that first sub-

element, "when public employees make statements pursuant to their official

duties, the employees are not speaking as citizens for First Amendment

purposes, and the Constitution does not insulate their communications from

employer discipline."  Garcetti, 547 U.S. at 421.   "[S]peech may be protected

'even if it concerns information related to or learned through public

employment[.]' "  De Ritis, 861 F.3d at 454 (quoting Lane, supra).  But "an

employee does not speak as a citizen if the mode and manner of his speech

were possible only as an ordinary corollary to his position as a government

employee."  Id.  "The critical question. . .is whether the speech at issue is itself

ordinarily within the scope of an employee's duties, not whether it merely

concerns those duties." <u>Lane</u>, 573 U.S. at 240.  Resolving this question requires a fact-intensive, practical inquiry. <u>See</u> <u>e.g.</u> <u>De Ritis</u>, 861 F.3d at 453-54 (analyzing the in-court statements of a public defender to attorneys and judges in conjunction with the Model Rules of Professional Conduct); <u>Tayoun v. City of Pittston</u>, 39 F. Supp. 3d 572, 577 (M.D. Pa. 2014)(analyzing the report of a police chief about another officer's criminal activity to the Attorney General's office in conjunction with his chain of command and his duties as articulated in Pennsylvania municipal statutes).  To the extent that the amended complaint falls short, the proposed second amended complaint plausibly pleads that the some of plaintiff's reports of illegal or improper activities in the borough were made as a citizen outside of his official duties as police chief.  For example, the proposed second amended complaint also includes allegations that plaintiff complained about issues in Girardville Borough to the Pennsylvania Office of Attorney General. (Doc. 32-1 ¶ 311).  Leave to amend will thus be granted and the motion to dismiss will be denied.  Moreover, to the extent that defendants could not fully challenge the First Amendment claim due to the plaintiff's delay in filing a proposed second amended complaint, defendants will be able to do so with a future motion.

### 3. Plaintiff's Claim for Fourth and Fifth Amendment Violations

Next, defendants move to dismiss plaintiff's claims for alleged violations of his Fourth and Fifth Amendment rights.  The court sees no basis for a Fourth Amendment claim because there are no facts pled in the amended complaint or proposed second amended complaint that plaintiff was searched or seized, only that defendants apparently asked plaintiff to use his police powers to violate others' Fourth Amendment rights.  Accordingly, the motion to dismiss any potential Fourth Amendment claim is granted without leave to amend because such a claim would be futile.

As for claims arising from the Fifth Amendment, plaintiff has removed that reference from the proposed second amended complaint.  He also appears to plead additional facts with reference to the Fourteenth Amendment instead of the Fifth Amendment and his rights to procedural due process. (Doc. 32-1 ¶¶ 297, 314-318).  Furthermore, in both the amended complaint and in the proposed second amended complaint, plaintiff alleges that the defendants violated his pre-deprivation procedural due process rights by not offering him notice of discipline or a hearing prior to his termination.  (Doc. 12, ¶¶ 182-185; Doc. 32-1, ¶¶ 326-329 (referencing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)).  The court thus cannot determine whether plaintiff's due process claims are futile.  Plaintiff's motion to amend regarding these allegations will thus be granted.  Furthermore, to the extent that the defendants' assert that plaintiff's removal from

the Girardville Police Department satisfied due process, the court will revisit this issue upon the filing of a future motion that addresses the additional facts pled in support of plaintiff's due process claims or based on discovery.

As for any equal protection based claims, the proposed second amended complaint includes additional averments that borough policies were not equally applied to plaintiff, who is Hispanic, versus non-Hispanic employees, such as tracking time on the job. (Doc. 32-1 ¶¶ 200, 213-214).  Plaintiff also proposes allegations that the defendants disavowed his role as chief of police because of his race and forced him to report to a white officer with less qualifications and a history of misconduct. (Id. ¶¶ 202-204).  Accordingly, the motion to amend will be granted regarding these allegations and the defendants can challenge such claims in a future motion.

### 4. Plaintiff's Section 1981 Claims

Defendants also move to dismiss plaintiff's Section 1981 claims. Generally, Section 1981 prohibits race-based discrimination in the making and enforcing of contracts. Rivers v. Roadway Exp., Inc., 511 U.S. 298, 302 (1994). The statute also guarantees equal rights "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

23

Plaintiff maintains a Section 1981 claim against all defendants in his amended complaint and proposed second amended complaint, including against the Defendant Borough of Girardville. (Doc. 32-1 ¶¶ 256-294).  But Section 1981 claims against a state governmental unit are futile or, in this case, duplicative of plaintiff's Section 1983 claims. See McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009) (holding that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.")(quoting Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 733 (1989)).  Accordingly, the motion to dismiss will be granted in part and plaintiff will not be permitted to assert a Section 1981 claim against the Borough of Girardville in a second amended complaint.

On the other hand, plaintiff will be granted leave to amend his Section 1981 claims against the individual defendants.  To state a claim for race discrimination under Section 1981, as plaintiff proposes, a plaintiff must aver facts supporting the following elements: (1) he is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute. See Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001); see also Hood v. N.J. Dep't of Civil Serv., 680 F.2d 955, 959 (3d Cir. 1982) (explaining that "intentional discrimination is a required element of a § 1981 claim").

24

Initially, plaintiff did not plead that he was a member of a racial minority. His proposed second amended complaint avers that he is Hispanic. (Doc. 32-1 ¶¶ 200, 204, 269). "[C]ourts have treated Hispanic as a race for purposes of § 1981 because Hispanic people are often perceived as non-white." Mojica v. Advance Auto Parts, Inc., 15-CV-1418, 2016 WL 107844, at *4 (E.D. Pa. Jan. 11, 2016)(citing Petrone v. City of Reading, 541 F. Supp. 735, 738 (E.D. Pa. 1982)); see also Al-Khazraji v. Saint Francis Coll., 784 F.2d 505, 517, n. 14 (3d Cir. 1986), aff'd, 481 U.S. 604 (1987).  As proposed, the Section 1981 claim against the individual defendants does not appear futile.  Plaintiff will thus be granted leave to amend his Section 1981 claim as proposed against the individual defendants.

### 5. Plaintiff's Section 1983 Claims

Defendants move to dismiss plaintiff's Section 1983 claims in the amended complaint, arguing that such claims are based on conclusory statements in the amended complaint or that the claims are premised on contradictory allegations. Additionally, defendants move to dismiss claims against Defendant Burns due to a lack of personal involvement.  In response, plaintiff has offered additional facts in his proposed second amended complaint addressed above.

Regarding plaintiff's claims against Borough of Girardville and Mayor Mehlbaum, the court cannot state with certainty whether such claims are futile,

25

and defendants will be able to fully address these new allegations in a future motion.  As for Defendant Burns, the court will take the same approach. The proposed second amended complaint addresses Defendant Burns's alleged personal involvement in constitutional violations. (Doc. 32-1 ¶¶ 200-213, 217-239).  Accordingly, the motion to dismiss plaintiff's Section 1983 claims will be denied subject to later consideration after the second amended complaint is filed.

### 6. Plaintiff's Title VII Claims

Plaintiff's amended complaint briefly mentions a violation of Title VII by the defendants. (Doc. 12, ¶¶ 177, 188-189).  At that time, plaintiff indicated that he had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), but the EEOC had not yet issued a right-to-sue letter. (Id. ¶¶ 188-189).  Defendants move to dismiss this claim for failure to plead exhaustion of administrative remedies.  Plaintiff's motion to amend and proposed second amended complaint, however, squarely address this issue with allegations that the EEOC has issued plaintiff a right to sue letter. (See Doc. 32-1 ¶ 33, Doc. 32-2).  Accordingly, the motion for leave to amend will be granted and plaintiff will be permitted to raise Title VII claims against the Borough of Girardville in an amended pleading.[4]  The motion to dismiss will be denied.

---

[4] Plaintiff concedes that he cannot bring Title VII claims against the individual defendants based on the averments in the proposed second amended complaint. See Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996).

26

### 7. Plaintiff's Pennsylvania Whistleblower Law Claim

Count II of plaintiff's amended complaint and Count V of the proposed second amended complaint advance a retaliation claim against the defendants in violation of Pennsylvania's Whistleblower Law, 43 PA. STAT. §§ 1421–1428. Defendants argue that this claim should be dismissed, and that amendment of the claim would be futile.  Plaintiff did not oppose the motion to dismiss and his proposed amended second complaint does not include additional factual averments under the heading for this claim. (See Doc. 32-1 ¶¶ 348-363).   The proposed second amended complaint, however, does contain other new allegations in other sections that are relevant to a Whistleblower Law claim.  The court will thus determine whether plaintiff's Whistleblower Law claim has merit based on the averments in the proposed second amended complaint as referenced above.

Section 3(a) of the Whistleblower Law provides:

> **(a) Persons not to be discharged.**-- No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 PA. STAT. § 1423(a).

27

The Whistleblower Law authorizes a civil action for injunctive relief, damages, or both. 43 PA. STAT. § 1424(a).  An employee alleging a violation of the Whistleblower Law must "must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." 43 PA. STAT. § 1424(b).

"To prove a cause of action for wrongful discharge under the Whistleblower Law, the plaintiff must show both a protected report of wrongdoing or waste and a causal connection between that report and the discharge." Evans v. Thomas Jefferson Univ., 81 A.3d 1062, 1064 (Pa. Commw. Ct. 2013)(citing O'Rourke II v. Commonwealth, 778 A.2d 1194, 1200 (Pa. 2001); Golaschevsky v. Dept. of Envir't. Prot., 720 A.2d 757, 758–59 (Pa. 1998); Gray v. Hafer, 651 A.2d 221, 225 (Pa. Commw. Ct. 1994), aff'd without op., 669 A.2d 335 (Pa. 1995)).

First, defendants argue that plaintiff has failed to plead wrongdoing or waste.  "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."  43 PA. STAT. § 1422. "Waste" is defined as "[a]n employer's conduct or omissions which result in

28

substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." Id.

In both the amended complaint and proposed second amended complaint, plaintiff plausibly alleges instances of "wrongdoing" by the individual defendants and other members of the Girardville Police Department.  Plaintiff's proposed second amended complaint also specifically alleges "waste" by the individual defendants in allegedly contaminating evidence in the police department's evidence room. (See Doc. 32-1 ¶¶ 228-237).  He alleges that he made reports of wrongdoing to supervisors (including Mayor Mehlbaum) by other members of the police force, such as mishandling evidence and entering the home of Hispanic citizens without a warrant or probable cause. (Doc. 32-1 ¶¶ 77, 121-124, 130-132, 138, 217, 356-357).  Plaintiff also alleges that he reported illegal conduct by the officers and the named defendants to the Pennsylvania Attorney General's office. (Id. ¶ 311).  Plaintiff has thus plausibly pled the element of making a protected report of wrongdoing or waste under the Whistleblower Law.

Defendants also challenge averments of causation.  "[T]o make out a prima facie case of retaliatory termination pursuant to the Whistleblower Law, a plaintiff must 'show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to [the plaintiff's] dismissal, **such as** that there was specific direction or information received not to file the report or [that] there would

be adverse consequences because the report was filed.' " Golaschevsky, 554

720 A.2d at 759 (quoting Gray, 651 A.2d at 225)(emphasis added); see also

Javitz v. Luzerne Cnty., 293 A.3d 570, 575, n. 6 (Pa. 2023)(discussing a

misarticulation of the Golaschevsky/Gray test by the Commonwealth Court).[5]

Both the amended complaint and the proposed second amended complaint

adequately plead a causal connection based on the surrounding circumstances

of plaintiff's discharge.  Per plaintiff, he refused to act as Mayor Mehlbaum's

personal police force to intimidate citizens and coerce them to move out of town.

(Doc. 32-1 ¶¶ 78-86, 88-91,100, 216).  Plaintiff also refused to target Hispanic

residents of Girardville as he was allegedly ordered to do so. (Id. ¶¶ 101, 209,

215, 222).  According to plaintiff, other officers were willing to do that on behalf of

the defendants. (Id. ¶¶ 102-119, 125-128, 215).  Plaintiff allegedly reported

numerous police-related issues to the named defendants, the borough solicitor,

and to the state Attorney General's office. (Id. ¶¶ 76, 87, 120-124, 130-139, 147-

156, 218, 224-234).  Subsequently, the defendants ignored him, disavowed his

---

[5] In considering the "such as" language used by the Pennsylvania courts, the court is cognizant of another articulated test for causation in retaliation cases. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)(citations omitted). Moreover, "[i]n the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

role as chief of police, accused him of tampering with the evidence room, made false statements about him to the press, suspended him, and then terminated him. (Id. ¶¶ 61-64, 67, 157-166, 188-192, 202-203, 240, 252).  Taken as a whole, these allegations plausibly allege a causal connection between plaintiff's reports and his termination.  Any issues about the sequence and timing of these alleged events remain issues for discovery. Accordingly, the motion to dismiss plaintiff's Whistleblower Law claim will be denied and plaintiff's motion to amend will be granted because the additional facts included in the proposed second amended complaint inform plaintiff's Whistleblower Law claim.

### 8. Plaintiff's Wrongful Termination in Violation of Public Policy Claim

Count III of plaintiff's amended complaint and Count VI of the proposed second amended complaint advance a wrongful termination claim in violation of Pennsylvania public policy.  In support of dismissal, defendants argue that the only public policy violation alleged is that the defendants violated the Whistleblower Law.  Such a claim is sufficient to proceed under Pennsylvania law. Denton v. Silver Stream Nursing & Rehab. Ctr., 739 A.2d 571, 577 (Pa. Super. Ct. 1999).  Accordingly, the motion to dismiss will be denied and this ruling has no bearing on plaintiff's motion to amend.

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss (Doc. 18) will be granted in part and denied in part.  The motion to dismiss will be granted with prejudice with regard to: 1) plaintiff's claim for punitive damages against Borough of Girardville as part of any cause of action pursuant to Section 1983; 2) plaintiff's claims for statutory and liquidated damages; 3) plaintiff's Section 1981 claim against the Borough of Girardville; 4) plaintiff's Section 1983 claims arising out of the Fourth and Fifth Amendments; and 5) plaintiff's Title VII claims against the individual defendants.  Otherwise, the motion to dismiss will be denied. Plaintiff's motion for leave to file a second amended complaint (Doc. 20) will be granted.  Plaintiff will be permitted to file a second amended complaint with the additional delineated causes of action and facts as proposed (Doc. 32-1) that also comports with the court's rulings on defendants' motion to dismiss.  An appropriate order follows.

Date: 8/27/24

JUDGE JULIA K. MUNLEY
United States District Court

32